GAZETT, Respondent, vs. IOLA CO-OPERATIVE MERCANTILE COMPANY, imp., Appellant.

*November 15—December 5, 1916.*

*Fraudulent conveyances: Sales of goods in bulk: Statutes: Validity: Garnishment.*

1. The bulk sale law (secs. 2317c to 2317f, Stats.),—providing that, with certain exceptions, the sale of a stock of goods in bulk, otherwise than in the ordinary course of trade, shall be conclusively presumed to be fraudulent and void as against existing creditors of the seller, unless certain requirements for the information and protection of such creditors are complied with,— is a valid exercise of the police power and does not invade any constitutional guaranty.

2. A sale in bulk of a stock of goods without compliance with secs. 2317c to 2317f, Stats., being void, the buyer at such sale holds the goods or the proceeds thereof subject to be reached by garnishment.

3. Where, after such a sale by insolvents, they settled with many of their creditors for fifty cents on the dollar, and in an action by a creditor with whom no settlement was made it appeared that the buyer was chargeable as garnishee with an amount largely in excess of the total amount of claims unsatisfied, the plaintiff was entitled to have his claim paid in full.

[4. Whether under any circumstances there should be a *pro rata* distribution among the creditors of the amount with which the buyer at such a sale is chargeable, not decided.]

APPEAL from a judgment of the circuit court for Waupaca county: BYRON B. PARK, Circuit Judge. *Affirmed.*

The appeal is from a judgment in favor of the plaintiff and against the garnishee defendant.

The action was begun in justice's court, and from judgments against all the defendants appeal was taken to the circuit court, and upon trial had by the court it was found in substance that on March 28, 1914, the principal defendants, Wipf and Torbenson, were insolvent, with liabilities of over $32,230 and with assets of about $14,200; that on said date the principal defendants sold to the garnishee defendant their

entire stock of merchandise and fixtures located at Iola, Waupaca county, Wisconsin, in bulk, and of the then value of $12,700, which sum the garnishee defendant paid without fraudulent intent on its part; that the proceeds of the sale, together with other assets of the defendants and some contributions from relatives, were used by the principal defendants in payment of the general creditors of the said defendants, and all but plaintiff and two others of such creditors were paid by voluntary composition fifty per cent. of the face of their claims in full settlement; that plaintiff and such two other creditors declined to accept such settlement; that the amount of such unsettled claims is less than $400, including the claim of plaintiff and one other assigned to him; that such sale in bulk was had without previously furnishing to the purchaser a verified list of the creditors and without either seller or buyer causing the creditors to be notified of said sale or of its terms and conditions prior to the transfer of the property on that date. The trial court held that upon the facts there was a violation of the so-called bulk sale law, and that by reason of such transfer in violation of the statute the garnishee defendant became liable to plaintiff for the full amount of his two claims.

For the appellant the cause was submitted on the brief of *H. J. Severson.*

*Lynn D. Jaseph,* attorney, and *S. Fred Wetzler,* of counsel, for the respondent.

ESCHWEILER, J.    The garnishee defendant, appellant here, claims that this bulk sale law, being secs. 2317c to 2317f, Stats., inclusive, is unconstitutional; or secondly, that the word "void" as used in the statute should be construed as "voidable," and that where a sale is without fraudulent intent and for full consideration the statute does not apply; and thirdly, that if the law be held constitutional, then that such garnishee creditors should recover no more than the fifty per

centum of their claims, the same proportion that was paid the other creditors with whom the compromise was made that more than exhausted the assets of the principal defendant. These statutes in substance provide that the sale, transfer, or assignment of any stock of goods, wares, and merchandise or fixtures pertaining to the same, in bulk, otherwise than in the ordinary course of trade, shall be conclusively presumed to be fraudulent and void as against the then existing creditors of such seller, unless certain conditions are complied with by seller and buyer.

An inventory must be prepared by both showing the quantity and, as far as possible, with the exercise of reasonable diligence, the cost price of each article in such sale; the buyer must demand and the seller must furnish a written verified list of his creditors, their addresses, and the respective amounts due them, or, if there be no creditors, a sworn statement to that effect; the buyer before taking possession or paying the consideration must give notice of such proposed sale and of the price, terms, and conditions thereof to all the creditors named in the list furnished by the seller or of whom the buyer has knowledge.

The law expressly excepts from its operation sales by persons acting in fiduciary capacities, such as executors, public officers, etc.; sales upon *bona fide* foreclosure of a chattel mortgage, or to or by any person to whom any such property may in good faith be transferred or assigned in trust for the creditors of such assignor or transferor for the purpose of liquidating his debts.

The law also provides that if such seller, or any one in his behalf, shall wilfully or knowingly refuse to make or shall make or cause to be made materially false or incomplete answers to the inquiries of the purchaser, he shall be deemed guilty of a misdemeanor and may be punished by imprisonment not to exceed a year or a fine not to exceed $250.

This form of legislation, aimed to prevent sales by debtors of their entire stock in bulk to one person, whereby frauds

might be perpetrated against other creditors, seems to have been first adopted in Louisiana in 1896, and from 1900 on was enacted in various forms in rapid succession by a large number of the states.

Laws substantially like the one in question here have been declared constitutional and a valid exercise of the police power by the supreme court of the United States and in a large number of the states shown in the following cases: *Lemieux v. Young,* 211 U. S. 489, 29 Sup. Ct. 489, affirming *Young v. Lemieux,* 79 Conn. 434, 65 Atl. 436, 600; *Kidd, Dater & Price Co. v. Musselman G. Co.* 217 U. S. 461, 30 Sup. Ct. 606, affirming *Musselman G. Co. v. Kidd, Dater & Price Co.* 151 Mich. 478, 115 N. W. 409; *John P. Squire & Co. v. Tellier,* 185 Mass. 18, 69 N. E. 312; *Jaques & Tinsley Co. v. Carstarphen W. Co.* 131 Ga. 1, 62 S. E. 82 (construing a statute very similar to the one here); *Humphrey v. Coquillard W. Works,* 37 Okla. 714, 132 Pac. 899 (where it was made presumptive only of fraud); *Coach v. Gage,* 70 Oreg. 182, 138 Pac. 847; *Wheeler & M. M. Co. v. Moon,* 49 Mont. 307, 141 Pac. 665; *Boise Asso. v. Ellis,* 26 Idaho, 438, 144 Pac. 6; *McDaniels v. J. J. Connelly S. Co.* 30 Wash. 549, 71 Pac. 37, 60 L. R. A. 947; *Cantrell v. Ring,* 125 Tenn. 472, 145 S. W. 166; *Appel M. Co. v. Barker,* 92 Neb. 669, 138 N. W. 1133; *McGray v. Woodbury,* 110 Me. 163, 85 Atl. 491; *Kett v. Masker,* 86 N. J. Eq. 97, 90 Atl. 243.

The following courts have held to the contrary: *Wright v. Hart,* 182 N. Y. 330, 75 N. E. 404, 2 L. R. A. n. s. 338; *Williams & Thomas Co. v. Preslo,* 84 Ohio St. 328, 95 N. E. 900; *Charles J. Off & Co. v. Morehead,* 235 Ill. 40, 85 N. E. 264; *Pogue v. Rowe,* 236 Ill. 157, 86 N. E. 207; *Block v. Schwartz,* 27 Utah, 387, 76 Pac. 22, 65 L. R. A. 308; *McKinster v. Sager,* 163 Ind. 671, 72 N. E. 854, 68 L. R. A. 273.

Probably the strongest attack made upon this form of legislation is by the New York court of appeals in *Wright v. Hart, supra,* but the views in the dissenting opinion by

VANN, J., meet with the approval of many of the cases first above quoted, and it is said in *People v. Luhrs,* 195 N. Y. 377, 89 N. E. 171, that this decision is impaired by the ruling in the United States supreme court in *Lemieux v. Young, supra.* In Ohio subsequent to the case of *Williams & Thomas Co. v. Preslo, supra,* both the constitution and the law were amended, and then the law was held constitutional in *Steele, Hopkins & Meredith Co. v. Miller,* 92 Ohio St. 115, 110 N. E. 648, L. R. A. 1916C, 1023.

In Indiana, when held unconstitutional in *McKinster v. Sager, supra,* it applied only to merchandise creditors and creditors who had loaned money for the purpose of buying merchandise, and after being amended so that it applied to all creditors, as does our law, it was upheld in *Hirth-Krause Co. v. Cohen,* 177 Ind. 1, 97 N. E. 1, reaffirmed in *Beard v. Indianapolis F. G. Co.* 180 Ind. 536, 103 N. E. 404.

In Illinois, after the two cases *supra,* the law was amended in 1913 to meet the objections suggested in those decisions, and then declared constitutional in *G. S. Johnson Co. v. Beloosky,* 263 Ill. 363, 105 N. E. 287, Ann. Cas. 1915C, 411. In New York the law was amended in 1914 and held constitutional, following the United States supreme court decisions, in *Apex L. Co. v. Litke,* 93 Misc. 353, 158 N. Y. Supp. 21, and unconstitutional in deference to *Wright v. Hart,* 182 N. Y. 330, 75 N. E. 404, 2 L. R. A. N. S. 338, in *Klein v. Maravelas,* 94 Misc. 458, 159 N. Y. Supp. 554. So leaving apparently but Utah in absolute condemnation of such a law.

The law in question was before this court in *Fisher v. Herrmann,* 118 Wis. 424, 430, 95 N. W. 392, and as its validity was not questioned on the argument or presented in the briefs of counsel, no opinion was expressed on the question now before us.

We see no difficulty in holding that this law is a valid exercise of the police power vested in the legislature and that it is not an invasion of any constitutional guaranty. It does

not take away the right to contract, but restricts and limits the methods by which such right to contract in certain general cases must be carried out.   It exempts from its provisions sales by persons in fiduciary capacities, the want of which exemption is one of the grounds relied upon in the Utah decision *supra*.   It also excepts from its conditions sales or transfers made for the purpose of liquidating the debts of the assignor.

Its penalties are mild and visited on the seller alone, and not on the purchaser.

The seeming severity of the provision that a bulk sale without the conditions precedent specified in the statute is *conclusively* presumed to be fraudulent as against existing creditors, is the provision which raises the most serious question. But as is said in *Frisbie v. U. S.* 157 U. S. 160, 165, 15 Sup. Ct. 586:

"While it may be conceded that, generally speaking, among the inalienable rights of the citizen is that of the liberty of contract, yet such liberty is not absolute and universal.   It is within the undoubted power of government to restrain some individuals from all contracts, as well as all individuals from some contracts.   It may deny to all the right to contract for the purchase or sale of lottery tickets; to the minor the right to assume any obligations, except for the necessaries of existence; to the common carrier the power to make any contract releasing himself from negligence; and, indeed, may restrain all engaged in any employment from any contract in the course of that employment which is against public policy."

So here, where the law does not absolutely prevent such sales when out of the ordinary course of the business but only places restrictions upon them, the fact that they may seem cumbersome, harsh, and arbitrary to the honest debtor is a consideration for the legislature alone.

The attempted sale by the principal defendants to the garnishee defendant being void under the statute, such garnishee defendant must hold the goods or the proceeds thereof subject

to be reached by garnishment.    And so it has been held by several of the courts.    *Jaques & Tinsley Co. v. Carstarphen W. Co.* 131 Ga. 1, 62 S. E. 82; *Wheeler & M. M. Co. v. Moon,* 49 Mont. 307, 141 Pac. 665; *Appel M. Co. v. Barker,* 92 Neb. 669, 138 N. W. 1133; *Kohn v. Fishbach,* 36 Wash. 69, 78 Pac. 199.

It appearing from the facts in this case that the amount with which the garnishee defendant must stand charged is largely in excess of the two claims presented by plaintiff here, and largely in excess of the total amount of claims unsatisfied, it is not necessary to determine the other question raised by the appellant as to whether or not, under any circumstances, there should be a *pro rata* distribution among the creditors of such proceeds.

Under the facts in this case the plaintiff is entitled to have his judgment paid in full.    *National G. Co. v. Plotler,* 167 Mich. 626, 133 N. W. 493.

*By the Court.*—Judgment affirmed.